THE PEOPLE OF THE STATE OF NEW YORK ex rel. BEAU-SITE COMPANY, Appellant, *v.* STATE BOARD OF TAX COMMISSIONERS OF THE STATE OF NEW YORK, Consisting of WALTER H. KNAPP and Others, Respondents.

Third Department, March 3, 1920.

Tax — hotel maintaining restaurant not taxable as mercantile corporation.

A corporation, organized for the purpose of conducting hotels, restaurants, cafes and bars, which operates a hotel with the usual restaurant and bar maintained by such establishments, is not a mercantile corporation engaged in the business of buying or selling tangible personal property for itself or for others within the meaning of article 9-A of the Tax Law (as added by Laws of 1917, chap. 726), although the larger share of the receipts comes from the restaurant department of the hotel.

It is subject only to taxation as a hotel conducted by a corporation.

CERTIORARI issued out of the Supreme Court and attested on the 12th day of June, 1919, directed to Walter H. Knapp and others, as and constituting the State Board of Tax Commis-

sioners of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in the matter of the assessment of the relator or connected with the refusal of said board to cancel and annul said assessment against the relator for the privilege of exercising its franchise in this State for the year beginning November 1, 1917, based on its business for the year ending December 31, 1916.

*Wesselman & Kraus* [*Henry B. Wesselman* and *Bertram L. Kraus,* of counsel] for the relator.

*Charles D. Newton, Attorney-General* [*C. T. Dawes, Deputy Attorney-General,* of counsel], for the respondents.

WOODWARD, J.:

The State Board of Tax Commissioners has assessed the relator under the provisions of article 9-A of the Tax Law, as added by chapter 726 of the Laws of 1917, which provides, except as therein exempted, for a tax of three per cent on net incomes of manufacturing and mercantile corporations as a franchise tax for the privilege of exercising their franchises or doing business in this State, depending upon whether they are domestic or foreign corporations.

The Beau-Site Company is a domestic business corporation, organized in the year 1911, for the declared purposes to " own, lease, manage, operate and conduct hotels, restaurants, cafes and bars in the Borough of Manhattan, City of New York," and " to carry on, conduct and manage any and all business and activities incident to and forming a part of the business of managing and conducting any and all such hotels, restaurants, cafes and bars wherever the same may be situated," etc. Acting under the powers thus conferred the relator has for several years been engaged in operating a building about 200 feet square and twenty stories in height, known as " The Biltmore " hotel. This building has approximately 1,800 rooms which are rented out to guests, transient and of uncertain duration, and in connection with these rooms the relator maintains a restaurant, kitchen, cigar-stand, bar-room and the other facilities ordinarily found in connection with a first-class hotel. At the time this assessment was made the hotel con-

ducted a bar, and to procure the necessary license it was bound to conform to the requirements of the Liquor Tax Law, which defines a hotel " as used in this chapter," as " a building regularly used and kept open as such for the feeding and lodging of guests, where all who conduct themselves properly and who are able and ready to pay for their entertainment, are received if there be accommodations for them, and who, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied, at a reasonable charge, with their meals, lodgings, refreshment and such service and attention as are necessarily incident to the use of the place as a temporary home, and in which the only other dwellers shall be the family and servants of the hotel keeper," etc.    (Liquor Tax Law, § 30, subd. N, as amd. by Laws of 1910, chap. 494.)   The relator, authorized by its charter to " own, lease, manage, operate and conduct hotels," owns or leases the building known as " The Biltmore " which is shown by the record to have all of the requirements of the statute to entitle it to traffic in liquors under the requirements for a hotel certificate; but the State Board of Tax Commissioners ignores the corporate purposes of the relator, and contends that because the larger share of the receipts of the corporation comes from the restaurant department of the hotel, the relator is engaged in mercantile pursuits under the definition of the statute.   (See Tax Law, § 208, as added by Laws of 1917, chap. 726.)   This definition is that " the term ' mercantile corporation ' means a corporation principally engaged in the business of buying or selling tangible personal property for itself or for others;" and the construction sought to be maintained is that a restaurant is engaged in such buying and selling.   But this entirely loses sight of the fact that the so-called restaurant in " The Biltmore " is an essential part of the hotel as defined in the Liquor Tax Law, and as understood in the law of innkeepers.   A " hotel in this country," say the court in *Cromwell* v. *Stephens* (2 Daly, 15, 21), " is what in France was known as a *hotelerie,* and in England as a common inn of that superior class usually found in cities and large towns;" and that the terms " hotel " and " inn " are synonymous.   (See *Foster* v. *State,* 84 Ala. 452; *People* v. *Jones,*

54 Barb. 311.)   In *Patterson* v. *Gage* (11 Colo. 50) it was held that one becoming responsible for H.'s hotel bill was chargeable with responsibility only for board and lodging, but not cigars, liquors and billiards.   " A person keeping a house for the entertainment of travelers, with board and lodging, is an hotel keeper, and   *   *   *   as such hotel keeper he is under an obligation to furnish his guests with board and lodging," and only such articles as he is obliged to furnish are proper items of a hotel bill, say the court in the case last above cited.

It will thus be seen that the relator, in conducting a restaurant within the building for the accommodation of those who sought entertainent, was but performing the obligations of a hotelkeeper; it was performing one of the distinct purposes of its being, as defined in its charter, and the restaurant was merely an integral part of the business of owning, managing and carrying on a hotel, and there can be no justification for declaring that its principal business was that of " buying or selling tangible personal property."   Its principal business was conducting a first-class hotel, and the restaurant was as much a part of that business, and as inseparable from it, as the renting of the rooms and the assumption of the responsibilities of an innkeeper.   The fact that the bookkeepers kept a separate restaurant account has nothing to do with the case.   The law authorized the relator to own, lease and conduct a hotel, and a hotel requires facilities for feeding and lodging its guests.   The one is as important and as much a part of the business as the other, and we know of no rule of law which permits the State Board of Tax Commissioners to change the lawful provisions of the relator's charter and to transform a hotel business into a mercantile corporation.   The relator is conducting one business, so far as this proceeding is concerned, and that business is the hotel business known as " The Biltmore," and it is subject to such taxes to which a hotel is liable where conducted by a corporation, and no other.

The determination of the State Board of Tax Commissioners should be reversed.

All concur.

Determination of the State Board of Tax Commissioners annulled, with fifty dollars costs and disbursements.